CINCINNATUS M. LUCAS, caveator, plaintiff in error, vs. JAMES M. PARSONS and others, defendants in error.

[1.] A paper in which it is declared to be the last will and desire of the person who executes it, and in which he revokes all former wills, and leaves his property to be distributed under the laws of Georgia, is a will, and the Ordinary has jurisdiction to admit it to probate.

[2.] A will disposing of property as the laws of distribution would decide it, is good, and the Ordinary has jurisdiction of it.

[3.] A contested will may be read to the jury, as the subject to which the evidence is to apply, and the reading it imparts to it no validity.

[4.] The subscribing witnesses may be permitted to testify that they subscribed the will in the presence of the testator, whether the attestation clause so states or not.

[5.] When a caveat against a will charges the will to be the result of a special delusion *against the caveator*, the attention of the jury ought to be called specially to that issue.

Caveat to will, in Monroe Superior Court. Tried before Judge CABINESS, at August Term, 1857.

The following paper was propounded for probate before the Ordinary of Monroe county, as the last will and testament of Littleberry Lucas, deceased, to-wit:

STATE OF GEORGIA, CRAWFORD County:

I, Littleberry Lucas, being of sound and disposing mind

Lucas vs. Parsons et al.

and memory, do hereby publish and declare this to be my last will and desire, as regards my property, and the disposition of the same. Whereas, I have heretofore made a will, which is now out of my possession, and I cannot obtain the same to destroy it, and whereas, the provisions of said will are not such as I now desire, and would be unjust to some of my children, on account of the large accumulation of money and notes since the date thereof, and all of which are willed to but one legatee, to-wit, my son Cincinnatus Lucas.

Now, I hereby revoke, annul and declare void said will, as well as all or any other wills which I may have made, leaving the distribution of all my property under the laws of Georgia, unless I may hereafter dispose otherwise of the same.

Signed, sealed and published the day and year underwritten.

LITTLEBERRY LUCAS, [L. S.]

Signed, sealed, and published and delivered in presence of the undersigned, as witnesses, this the second day of April, eighteen hundred and fifty-five.

OWEN S. WOODWARD,
JAMES M. SIMMONS,
JOHN ANDERSON,
B. M. HATTON,
ANGUS J. McCUNEY.

Cincinnatus M. Lucas, son and heir-at-law of deceased, and the person named as taking the money and notes in the will revoked, entered his caveat to the probate of the aforesaid paper as the last will and testament of Littleberry Lucas, deceased.

1st. Because the Court of Ordinary of Monroe county has not jurisdiction of the same, deceased being, at the time of his death, legally domiciled in the county of Crawford, in said State.

Lucas vs. Parsons et al.

2d. Because said paper is void under the law, and is not a will; and because said instrument does not dispose of the testator's estate; and because said paper carries no other estate than what passes under the statute of distributions to the heirs-at-law of deceased.

3d. Because said paper is not a will—it not being testamentary—as appears upon its face.

4th. Because, at the time said paper purports to be executed, said Littleberry Lucas was a lunatic, under commission, and not capable in law of making a will.

5th. Because, at the time of its execution, deceased was laboring under an insane delusion or hallucination as to caveator, and was thereby greatly prejudiced against him.

6th. Because deceased was not of sound and disposing mind or memory.

7th. Because deceased was unduly influenced by the propounders to execute said paper.

8th. Because there is now a suit pending in the county of Crawford, in relation to the subject matter of this proceeding, and to which the parties are the same, which is now on appeal in the Superior Court of said county.

9th. Because said pretended will is void, and ought not to be admitted to probate.

The Ordinary pronounced in favor of the instrument propounded, and ordered and adjudged the same to record and probate, as the last will and testament of Littleberry Lucas, deceased. Whereupon, caveator appealed.

The case was tried upon the appeal, in the Superior Court, and the following bill of exceptions, by caveators, will fully show the decisions, rulings and charges of the presiding Judge, excepted to, viz:

GEORGIA, Monroe county;

Be it remembered that on the first day of September, 1857, during the regular August term of the Superior Court of said county, in the term aforesaid, his Honor Elbridge G. Cabiness,

one of the Judges of the Superior Courts of this State, then and there presiding, the case of James M. Parsons and wife, Elza Holsten and wife, and Peggy Lucas, propounders of the alleged last will and testament of Littleberry Lucas, late of said county, deceased, against Cincinnatus M. Lucas, caveator, then and there pending on the law side of said Court, and being on the appeal from the Court of Ordinary, came on to be heard, and both parties having announced themselves ready, and a special Jury being empanelled to try the same, the propounders opened their cause to the Jury and were about proceeding to prove the execution of the paper propounded as a will, when caveator's counsel objected to the same upon the ground that the Court of Ordinary had no jurisdiction to prove the said paper, and consequently this Court had not upon appeal, for the reason that said paper was not testamentary in its character, but was simply a declaratory revocation, and that those who took property under it took by descent and not by purchase, that the paper appointed no executor and made no bequest. Which objection, after argument had thereon, was overruled by the Court, and caveator's counsel excepted.

Propounders then offered to prove by Orrin S. Woodward, one of the subscribing witnesses to said paper, that he and the other subscribing witnesses, subscribed the paper in the presence of Littleberry Lucas and at his request, to which said testimony, caveator, by his counsel, objected, upon the ground that the attestation clause of said paper did not show that said witnesses signed the same in the presence of the said Littleberry Lucas, but was in the words following, "Signed, sealed, published and declared in the presence of the undersigned as witnesses," which objection was overruled by the Court and said testimony admitted, to which caveator excepted. After the proof of the *factum* of the paper propounded had been made by four of the subscribing witnesses thereto, propounders then tendered the same and offered to read it to the Jury, when caveator's counsel objected thereto, upon

the ground that said paper was not testamentary in its character, but was a declaratory revocation, not entitled to probate as a will before the jury, which motion was overruled by the Court and caveator's counsel excepted. A copy of the said paper, together with all the oral and documentary evidence given in the case, is filed with a motion for a new trial in this cause, and is referred to here and made a part of this bill of exceptions. After the testimony was closed on both sides, caveator's counsel requested the Court to charge jury as follows :

1st. That although a person, *non compos mentis*, under guardianship as a lunatic or insane person, may make a will, if he is in fact of sound mind at the time of its execution, yet the fact that he is under guardianship as such lunatic, or insane person is *prima facie* evidence of his incapacity to make a will, and the burthen of proof is on those claiming that he was in a lucid interval ; or that he was restored to reason, at the time of the execution of the will, to show that fact.

2d. That great caution is necessary to be observed in examining the proof of a lucid interval, that such proof is extremely difficult, for this among other reasons, viz: that the patient is not unfrequently rational to all outward appearance without any real abatement of his malady.

3d. That where *delusion* exists, and can be called forth on any subject, (it having been first shown by the finding on an inquisition that the alleged testator is a general lunatic,) then he cannot be said to be in a lucid interval, and before such lucid interval can be established, positive proof must be given of the disorder having been thrown off at the time of the alleged execution of the will, and there must be a complete interval of sanity applying to the particular act in question, and if there is any thing sounding to folly it will be conclusive against the presumption of a lucid interval to all legal purposes.

4th. That if Littleberry Lucas was under guardianship as

Lucas vs. Parsons et al.

a person lunatic or insane, at the execution of the paper propounded, then burthen of proof is on those propounding it, to show beyond a reasonable doubt, by clear and satisfactory testimony, that he had both mental capacity and freedom of will and action to make a will.

5th. That in estimating the proof of a lucid interval or restoration to sanity, where permanent proper insanity has once been established by an inquisition, little reliance is to be placed upon the opinions of witnesses, but the Jury should be guided in their judgment by the facts proved and acts done.

6th. That where there is a great change of testamentary disposition and a total departure from former testamentary intentions long adhered to, without any adequate or rational motive or reason for the same, especially if at the time of making the subsequent will, the capacity of the testator is at all doubtful, these are circumstances which go strongly to show that the will is not the act of the testator, and require clear and satisfactory explanation; but such doubt must exist as to the capacity of the testator at the time of the execution of the will.

7th. Undue influence to invalidate a will, varies with the strength or weakness of the testator's understanding; where the capacity is little, a smaller amount of influence will have that effect, especially where the alleged testator is under guardianship as a lunatic; and under such circumstances, excessive importunity or constant annoyance of the testator, on account of association or intimacy with one supposed to be a favorite with and having claims upon his bounty, by either of the propounders, may amount to undue influence.

8th. Papers written by a testator, in the custody of a guardian as a lunatic, subsequently to the paper propounded, though evidence, are to be regarded with jealousy and received with caution, as such a testator is not to be permitted to prove his own sanity; and his subsequent verbal declarations are entitled to no more if to so much force and weight.

9th. That in arriving at the character of the act under con-

sideration, the terms upon which the testator stood with different members of his family are to be taken into consideration by the Jury

10th. That in determining whether a lunatic · under the control of a guardian was restored to sanity, or in a lucid interval, at the time an act was done, the jury are to look to the state of feeling and modes of thinking when sane, and if there is a prolonged departure from such modes of thinking and feeling, this is evidence of insanity; and if at the time of the alleged lucid interval, or restoration to sanity, the state of feeling and modes of thinking are such as are unusual to the individual while in a healthy state of mind, he cannot be said to be restored to sanity or enjoy a lucid interval.

11th. If the lunatic converses intelligently and rationally on those subjects upon which he is most deranged then the jury may consider the lucid interval or restoration to sanity established; but if not, it is otherwise, and the mere fact that he converses intelligently and rationally upon indifferent subjects, affords no sufficient evidence of his restoration to sanity.

12th. That if the jury believed from the evidence that Littleberry Lucas labored under derangement or delusion shortly before as well as subsequent to the execution of the paper propounded, proof of calmness and of doing matters of business is not sufficient to repel the presumption of insanity raised by the inquest of lunacy, and the verdict of the jury declaring him a lunatic.

13th. That the jury are to consider the will of 1845 as evidence in determing the question of the validity of the paper propounded—all ·of which charge the Court gave in the words and language as requested by caveator's counsel and without any qualification or addition, except the sixth, which the Court qualified by adding thereto, "but such doubt must exist as to the capacity of the testator at the time of the execution of the will," and to which qualification and addition

caveator, by his counsel, excepted.  The Court then charged the jury as follows :

In the case now before you, James M. Parsons and his wife, Elza Holsten and his wife, and Peggy Lucas, offer a paper, which they allege to be the last will and testament of Littleberry Lucas, deceased, and propound it for probate. Cincinnatus M. Lucas has filed his objections and resists the admission of this paper to record, as the last will and testament of the deceased on the following grounds, viz:

1st.  A want of testamentary capacity in the testator, or in other words, that at the time of the execution of this paper as his will, he was not of sound disposing mind and memory.

2d.  That it was obtained by the exercise of undue influence on the part of the propounders.

3d.  That it was obtained by fraudulent practices on the testator.

These are the grounds relied upon by the caveator to set the paper aside.

The propounders say that the paper offered is the last will and testament of the deceased.  The caveator says that it is not his last will and testament, but that it is void on some one or all the grounds relied upon in his caveat—and this is the issue for you to try.  Is the paper the last will and testament of the deceased ?  Or is it void on either or any of the grounds stated in the caveat ?

The propounders bring the paper into Court and ask that it be admitted to probate and record as the last will of the deceased.  It is incumbent on them to show it to be so ; that it was executed with all the formalities required by law ; that it was signed by the testator, and attested by three credible witnesses in his presence and at his request ; that he had capacity to know what he was doing at the time he executed it, and that he executed it freely, voluntarily and without compulsion.  It is for you to determine whether such proof has

been made, and if it has, then you will find the paper propounded to be the last will and testament of the deceased, unless it be void on some, or all, of the grounds stated in the caveat.

The Court will explain to you the law applicable to the several objections against the admission of the paper to probate as the last will of the deceased, and it will then remain for you to determine according to the law, as it may be given you by the Court, whether such facts have been proven as are sufficient to set aside the paper as such will.

The first ground of objection is a want of testamentary capacity in the deceased at the time of the execution of the will.

The Court will explain to you what the law considers testamentary capacity, and leave it to you to determine whether the evidence shows the testator to have possessed it at the time he signed the paper before you.

By testamentary capacity is meant a sound disposing mind and memory; that is, the testator must have mind enough to know what he is doing, and memory to recollect what property he has to dispose of, and the persons to whom he wishes to bequeath it. To possess sufficient testamentary capacity to make a will, the law does not require a testator to have the same strength of mind which is necessary to enable him to make contracts, and to transact the ordinary business of life. If he has capacity to know his property, and the persons who are to be the objects of his bounty, that is testamentary capacity, and the law requires nothing more to constitute it.

In relation to the paper now before you, the question for you to consider and determine is: were the mind and memory of the deceased sufficiently sound to enable him to know and understand the business in which he was engaged at the time he signed it. If he had such a mind and memory then he had testamentary capacity ; you will look to the testimony and from it determine this question; and you will

Lucas vs. Parsons et al.

look to the time when the will was executed, as the point at which his capacity is to be tested, and you will determine whether at that time he possessed a sound disposing mind and memory. He may not before or afterwards have had such a mind and memory; he may not before or afterwards have had sufficient testamentary capacity to enable him to make a valid will, yet if he had such capacity at the time of the execution of the paper before you, that is sufficient, and that is all the law requires; and his incompetency before or after the execution of the will amounts to nothing, unless it bears upon the time when he signed the paper, and is of such a nature as to show a want of testamentary capacity at that time. That being the point of time to which you will direct you attention to determine the capacity of the testator, you will look to the testimony of the witnesses who attested the will, and of those who were present at its execution; all other things being equal, the law places more reliance upon the testimony of such witnesses; than upon those who were not present, and for the obvious reason that the law considers the attesting witnesses as called upon to examine into and be satisfied of the capacity of the testator to make a will. But the Court does not mean to say that you are to look alone and exclusively to the testimony of the attesting witnesses, and those present at the execution of the will; you will take into consideration the whole testimony of all the witnesses—look to their manner of testifying; their means of knowledge; their skill and capacity to judge in relation to the subject upon which they testify; the relation they sustain to the parties at controversy, and the bias and influence under which their testimony is given; look to all these circumstances, compare and weigh the testimony, and give the preponderance to the side on which the weight of testimony hangs.

And in determining the testamentary capacity of the testator, or the want of it at the time of the execution of the paper, you will also look to and consider all the circumstances attending its execution, in proof before you. You will look

to his means of knowing the contents of the paper; whether it was written by himself, of dictated by him and written by his directions and in accordance with his instructions; and you are authorized to determine the soundness of the testator's mind from all these circumstances and from his conversation and acts at the time the will was made; and look to the testimony of the witnesses for the facts upon this point.

In the case now submitted to you, the deceased had been declared a lunatic by a Court of competent jurisdiction, and as a lunatic he had been placed under the care and protection of a guardian, and the management of his property confided to such guardian; and at the time of the execution of the paper before you, the letters of guardianship were unrevoked, and the commission of lunacy still in force. When one is declared a lunatic, the burden of proving his restoration to sanity is upon those who assert it. Though the deceased was under a commission of lunacy, yet if he had a lucid interval, if at any time, he was restored to sanity, it was competent for him to make and execute a will, and all acts, done by him during a lucid interval, except such as are forbidden by law, are valid and binding—but the burden of proving the lucid interval, and the restoration to sanity is upon the propounders; and the testimony must be such as to satisfy you, beyond a reasonable doubt, that at the time he signed the will he was restored to sanity, or that he executed it during a lucid interval. The doubt must be a reasonable one, it must not be assumed for the occasion, but must actually exist, and must arise from such a state of facts as to leave the mind in a state of hesitation which side the truth lies. The proof must satisfy you, beyond such a doubt, that the deceased, at the time of signing this paper, was restored to sanity, or did it during a lucid interval, and for such proof you will look to the testimony of the witnesses.

But partial insanity, a delusion on some particular subject. may exist. When such is the case, when the testator is deranged on a particular subject, and rational on all other subjects,

Lucas vs. Parsons et al.

his testamentary capacity is not destroyed, unless the will is the offspring of the delusion under which the testator is laboring, but if the act can be traced to the morbid delusion, and is the act of that delusion, then the act is void.

If the deceased was laboring under a delusion of mind on any subject at the time of the execution of this will, and the will is the result of that delusion, then it is void, though he might have been sane on all other subjects; but unless the will be the result of such delusion, his will is not vitiated by partial insanity or delusion on a subject not affecting his mind when the will was made. A delusion is where one supposes a thing to be true which is not true, and acts in reference to it as though it were actually true, and under a firm belief that it is so.

If you should come to the conclusion, from the testimony, that the testator was incompetent to make a will at the time of the execution of this paper, that will end your deliberations on this case, and you will find in favor of the caveator; but if you should find from the evidence that he was competent and had testamentary capacity, then you will inquire :

2d. If the paper before you was extorted from him by undue influence? And to enable you to determine this question, the Court will instruct you what is meant by undue influence ; it is as clearly defined in law as is testamentary capacity ; both are so clearly defined that no one can mistake either. What then does the law consider undue influence ? It means an influence which amounts to coercion and restraint; an influence which destroys the free action of the testator, and prevents him from disposing of his property as his own will would dictate. It is not the influence arising from arguments, addressed to the judgment and understanding, or arising from considerations operating on the natural affections of a parent; but to be undue, it must be such an influence as constrains the testator to make a disposition of his property without the exercise of any volition on his part—it must destroy his free agency. If the influence amounts to constraint

and prevents the free action of the testamentary capacity of the testator, then it is undue, and a will obtained by the exercise of such an influence is void—it is not the will of the testator, but the will of the person or persons who exercised the undue influence.

Wherever an improper influence is brought to bear upon the mind of one whose mental capacity is naturally imbecile or impaired by age, intemperance, disease, or from any other cause, proof of the testamentary capacity of such a one, and of the free and voluntary execution of his will, must be clear and strong. If you should believe from the testimony in this case, that such an influence was exerted upon the testator, as constrained him to make a disposition of his property contrary to his free will and desire, then you ought to set it aside; but if no such influence was exercised, then you will find the paper propounded to be the last will and testament of the deceased, unless it be void upon the third ground, viz: That it was obtained from the testa-r by fraudulent practices. What is meant by fraudulent practices is, deception practiced upon the testator—a fraud perpetrated upon him by which he was deceived and induced to make a will, which, if left to his own free volition, he would not have made, or by which fraudulent practices, provisions were incorporated in his will unknown to him. Such is what the Court understands to be meant by fraudulent practices. If such deception was practiced upon the testator by the propounders, or either of them; if they procured the will to be made by the testator by fraudulent practices—and you must look to the testimony of the witnesses to determine whether such be the case; if the evidence is such as to satisfy you of the existence of such facts, then the will is tainted with fraud and should be annulled.

But fraud is not to be presumed, it must be proved; it must in some way be shown, and when the caveator alleges fraudulent practices on the part of the propounders in procuring this will to be made, it is incumbent on him to

Lucas vs. Parsons et al.

prove the fraud—the fraudulent practices.   But he is not required to prove the fraud by direct and positive testimony. Fraud most usually veils itself in mystery, and it is by circumstances, most usually, that it can be brought to light and detected.   It is not for the Court to say whether such circumstances have or have not been proven in this case, it is for you to determine this question.   The Court instructs you that you are not to presume fraud, it must be shown by testimony either direct or circumstantial; and if proven by circumstances, these should be strong enough, when combined and examined, to satisfy you beyond a reasonable doubt of the existence of the fact they are adduced to establish.   The proof, when circumstantial, must be strong enough to satisfy the consciences and understandings of reasonable men; and the question for you to determine is, whether the testimony, either positive or circumstantial, is sufficient to satisfy your minds and consciences that this will was procured to be made by fraudulent practices on the part of the propounders.   If that fact be established by the proof, it is sufficient to annul it and set it aside.

To sum up in conclusion—you are to say, from a careful consideration of all the testimony before you, whether Littlebury Lucas had sufficient testamentary capacity to make a disposition of his property with discretion and understanding at the time he executed this will; if he had such capacity, then secondly, was the will obtained by the exercise of undue influence, and was he under such constraint as destroyed his volition and prevented him from disposing of his property according to his own will and desire.   If there was no such influence, then thirdly, was the will obtained from him by fraudulent practices—if not, then the caveator has not successfully attacked the will.   These are the questions for you to consider and determine.   If he did not possess testamentary capacity at the time he executed the will, it ought to be set aside.   And if it was obtained by fraudulent practices on the part of the propounders, or any of them, it

ought to be set aside; but if none of these grounds exist, then it ought to be established as the last will and testament of the deceased. As you may determine the facts, so let your verdict be rendered.

The jury then retired and brought in a verdict in favor of the propounders, and setting up the paper propounded as the last will and testament of Littleberry Lucas, deceased. Whereupon the caveator moved, during the said term of said first mentioned Court, for a rule *nisi* for a new trial upon certain grounds and for certain reasons mentioned in said motion, which grounds and reasons will fully appear in the transcript of the record accompanying this bill of exceptions and which is made a part hereof, which said motion for a new trial the said Court overruled upon each and all the grounds therein taken; whereupon caveator, by his counsel, excepted; and now on this the 8th day of October, 1857, being within thirty days from the adjournment of said first mentioned term of said Court, comes the caveator and presents his bill of exceptions and says the Court committed error.

The jury returned a verdict for the propounders, whereupon counsel for caveator, during the said term and before the adjournment thereof, moved for a new trial in the said cause on the following grounds:

1st. Because the Court erred in holding the paper propounded was testamentary in its character and entitled to probate.

2d. Because the Court erred in allowing the paper propounded to be read in evidence to the jury and in overruling caveator's objection thereto; that the Court had no jurisdiction over it, it not being testamentary in its character but a declaratory revocation, and that the persons who took under it took by descent and not by purchase.

3d. Because the Court erred in allowing the subscribing witnesses to said instrument to testify that they signed in the presence of the alleged testator and in overruling caveator's objection thereto, viz: that the attestation clause to said instrument does not recite or contain the fact that said witness-

es signed the same in the presence of the said Littleberry Lucas, but in the words following: " Signed, sealed, published and declared in the presence of the undersigned as witnesses,"

4th. Because the Court erred in charging the jury that by testamentary capacity was meant that the testator had mind enough to know what he was doing and memory to recollect what property he had to dispose of, and the persons to whom he wished to bequeath it—to possess sufficient testamentary capacity to make a will, the law does not require the testator to have the same strength of mind which is necessary to enable him to make contracts and transact the ordinary business of life; if he had capacity to know his property and the persons who were the objects of his bounty, that was testamentary capacity, and the law required nothing more to constitute it.

5th. Because the Court erred in charging the jury that in relation to the paper before them, the question for them to consider was, were the mind and memory of the deceased sufficiently sound to enable him to know and understand the business in which he was engaged at the time he signed ; and if he had such a mind and memory, then he had testamentary capacity; that they would look to the testimony and from it determine the question ; and that they would look to the time when the will was executed as the point at which capacity was to be tested, and they would determine whether at that time he possessed a sound disposing mind and memory, he might not before or afterwards have had such a mind and memory ; he might not before or afterwards have had sufficient testamentary capacity to enable him to make a valid will, yet if he had such capacity at the time of the execution of the paper before them, that was sufficient, and that was all that the law required ; and his incapacity before or after the execution of the will amounted to nothing, unless it bore upon the time when he signed the paper, and was of such a nature as to show a want of testamentary ca-

pacity at that time, that being the point of time to which they would direct their attention to determine the capacity of the testator, and in requiring the jury to look to the testimony of the witnesses who attested the will and those who were present at its execution, and that other things being equal, the law placed more reliance upon the testimony of such witnesses than upon those who were not present, and for the obvious reason that the law considered the attesting witnesses as called upon to examine into and be satisfied of the capacity of the testator to make a will; that the Court, did not mean to say that you are to look alone exclusively to the testimony of the attesting witnesses and those present at the execution of the bill, but that the jury were to take into consideration the whole testimony of all the witnesses, to look to their manner of testifying, their means of knowledge, their skill and capacity to judge in relation to the subject matter upon which they testify, the relation they sustain to the parties at controversy, and the bias and influence under which their testimony is given; to look at all these circumstances, to compare and weigh the testimony, and give preponderance to the side on which the weight and testimony might hang.

6th.   Because the Court erred in charging the jury that if fraud was proven by circumstances, these should be strong enough, when combined and examined, to satisfy them, beyond a reasonable doubt, of the existence of the fact they were adduced to establish; that the proof, when circumstantial, must be strong enough to satisfy the consciences and understandings of reasonable men; and the question for them to determine was, whether the testimony, either positive or circumstantial, was sufficient to satisfy their minds and consciences that the will was procured to be made by fraudulent practices on the part of the propounders.

7th.   Because the Court erred in qualifying the following charge requested by caveator's attorneys, viz: "That when there is a great change of testamentary disposition and a to-

Lucas vs. Parsons et al.

tal departure from former testamentary intentions long adhered to, without any adequate or rational motive or reason for the same, especially if at the time of making the subsequent will the capacity of the testator is at all doubtful, these are circumstances which go strongly to show that the will is not the act of the testator and require clear and satisfactory explanation," by adding thereto, "but such doubt must exist as to the capacity of the testator at the time of the execution of the will," and in not giving the same in the words and language of caveator's counsel in writing without qualification or addition.

8th. Because the verdict is contrary to law and equity.

9th. Because said verdict is contrary to the evidence, and decidedly and strongly against the weight of evidence.

Which motion for a new trial was overruled by the Court and caveator's counsel excepted. And counsel for caveator on this 8th day of October, being within thirty days from the adjournment of the said term of the said Court, tenders his bill of exceptions and says the Court erred:

1st. In overruling his demurrer to said paper propounded as a testamentary paper, and in admitting the same in evidence to the jury and overruling caveator's objections thereto.

2d. In allowing the subscribing witnesses to prove that they signed the paper propounded in the presence of Littleberry Lucas and at his request, and in overruling caveator's objections thereto.

3d. In refusing to grant a rule *nisi* for a new trial, and in overruling each and all the grounds therein taken.

And as the facts aforesaid do not appear of record, the said caveator prays that the foregoing may be signed and certified as his bill of exceptions in said cause, according to the provisions of the statute in such case made and provided.

PINKARD & STEPHENS; G. R HUNTER; G. R. CULVERHOUSE; MILLER & HALL, for plaintiff in error.

R. P. TRIPPE; POE & GRIER; and G. W. NORMAN, *contra*.

*By the Court.*—McDonald J., delivering the opinion.

This cause was tried in the Superior Court of Monroe county. Several points were made during the progress of the trial, the decisions of which by the Court below, were excepted to by counsel for the caveator of the will, and after a verdict in favor of the propounders, they were incorporated, with other grounds, in a motion for a new trial.

The Court refused the motion, and his judgment thereon is assigned as error. As we put our judgment on a single point, it is scarcely necessary to go into an elaborate consideration of all the grounds presented in the record. We will, however, advert to them in a manner to narrow the points of controversy between the parties, on a future trial.

[1.] It is first objected that the Court erred in holding the paper propounded to be testamentary in its character, and entitled to probate. The paper propounded is short, but the whole tenor of it is testamentary. The testator, for we may call him so, declares it to be his last will and desire as regards his property, and the disposition of the same. It is true, that this declaration alone would not constitute it a will; but, taken in connection with its contents, it is entitled to much consideration. He proceeds to say that he had theretofore made a will, which was out of his possession, and he could nor obtain the same to destroy it. Here is indicated strong dissatisfaction with a will which he had made, and his wish to cancel it. He assigns a good reason for desiring to cancel it; that it would be unjust to some of his children, as. he had, by that will, given all his money and notes to one legatee, and they had largely increased since the date of it. He revokes and annuls that will, and any other will which he may have made. He leaves his property to be distributed under the laws of Georgia, reserving to himself the right to dispose of it thereafter.

His will, as it then was, was not such as he desired it to be. It was unequal. One of his his children would, by the accu-

Lucas vs. Parsons et al.

mulation of money and notes, since it was written, have considerably more than the rest, which would be unjust. He revokes that will, leaving his property for distribution under the laws of Georgia. It was the same as if he had said, " I leave my property to be equally divided amongst my wife and children." It was a bequest of his entire estate to his wife and children. They were legatees, therefore, and the paper was a will. It disposes of his property differently from his first will. It is said, however, that the paper is inoperative as a will, because it disposes of the entire estate precisely as the law would distribute it, and the heirs-at-law, in such case, take by descent, and not by purchase, that is, under the will.

[2.] The reason of the rule in England, to that effect, does not apply in this State. It was adopted in that country in favor of the Lord for the preservation of his tenure, and o creditors for the preservation of their debts. 1 *Powell on Dev.* 421. In England, an estate in chattels is not transmissible to the issue, and is incapable of any kind of descent. *Knight vs. Ellis,* 2 *Brown Ch. Rep.* 578. Chattels go to the executor or administrator, and are held in trust by them, first for creditors, and then for those entitled under the will or the statute of distributions. In this State, there is no distinction in respect to the payment of debts, between real and personal estate, except that real estate must not be so applied, until the personalty is exhausted, and then only by making it appear that it is for the benefit of the parties interested that it should be sold. Hence, the lands as well as personalty go, in this State, to the executor or administrator, for the payment of debts, and creditors are not driven to a proceeding against the heirs-at-law for the recovery of their debts, after exhausting the personal assets. There is, therefore, no reason for the rule contended for, and a will embracing real and personal estate, here, is just as good as a will of personalty to the same purport would be in England. There are many reasons why a will of this sort should be sustained. But

is unnecessary to encumber this opinion with them. We think that the paper is testamentary in its character, and that the Court of Ordinary had jurisdiction over it.

[3.] The Court acted properly in submitting the paper to the jury. It was not a case in which the paper was relied on as evidence of title; but it was itself the subject of the suit, and the questions were on the paper, whether it was the will of the deceased, made and executed by him under circumstances which entitled it to probate as a will. On such an issue, the instrument should be presented to a special jury, precisely as it is to the Ordinary, whose duty it is to pass upon it primarily. The reading it to the Ordinary, or to the jury, gives it no validity whatever. It only discloses the subject to which the testimony is to apply, and in many cases, it is necessary to a correct application of the testimony, by the mind of the Court or jury, that the instrument should be before them. The result depends almost entirely on the testimony, extrinsic of the will, and its contents are seldom, I may say, perhaps, never, considered when extraneous evidence makes out a clear case of capacity and uninfluenced testamentary intention.

[4.] The subscribing witnesses were allowed to testify that they subscribed in the presence of the testator. This testimony does not *contradict* the attestation clause and the Court below committed no error in admitting it.

We overrule all the grounds of special exception made in the record to the charge of the presiding Judge to the Jury. We think that he laid down the law fairly and accurately, and quite as favorably to the caveator as he was entitled to have it, as far as he went, and it was a very full charge, with one exception. Indeed, the exception to the charge, set forth in the 7th ground of the motion for a new trial, is not borne out, by the evidence given on the trial. It is too much to assume, that the paper propounded as a will showed a total departure from former testamentary intentions *long adhered o, without any adequate or rational motive or reason for the*

*same,* when the testator had expressed dissatisfaction with his former will, before he became deranged, to as many as three witnesses, Woodward, Jackson and Banks, and assigned to some of them very good reasons for desiring to make a new will. This request was very strong in favor of caveator, and it was given in the language of the request; but the exception is to the remark made by the Court to the jury, "but such doubt must exist as to the capacity of the testator, at the time of the execution of the will." This addendum of the Court is identical, *in substance,* with the charge as requested, and as it was given, unless a distinction is drawn between the *"making"* and the *"execution"* of the will; and if there be any distinction, the Court was correct in its explanation in confining the doubt to the time of the *execution* of the will.

The 4th ground in the motion for a new trial, is a general exception as to the meaning of the terms "testamentary capacity" as applicable to this case.

[5.] One of the grounds in the caveat, is "that at the time of the execution of the will the testator was laboring under an insane delusion or hallucination, as to *caveator,* and was therefore greatly prejudiced against him."

The charge of the Court was, that if the deceased was laboring under a delusion of mind, on any subject, at the time of the execution of the will, and the will was the result of that delusion, then it is void, though he might have been sane on all other subjects; but unless the will was the result of such delusion, his will is not vitiated by partial insanity or delusion on a subject not affecting his mind when the will was made. The definition of the term "delusion," is given correctly. But we think, that although the charge of the Court was correct as to the effect of delusion generally, yet as the caveat charged the will to be the result of a special delusion *against the caveator,* the attention of the jury ought to have been called specially to that issue. The deceased had been a lunatic. This was conceded on all hands. His lunacy

was not traceable to any fact or circumstance connected with the caveator, but when in that condition, it is manifest that he was impressed most unfavorably towards him, and apparently without adequate cause. If he was subsequently restored to his reason in all respects, except as to the feeling towards his son, conceived when in an insane state of mind, and if he continued to suppose, that his conceits, formed when in that condition, were true, when they were not true, and if he acted in making his will as if they were true and under a firm persuasion that they were true, and the will was the result of that delusion, it ought not to stand. But, on the other hand, if the deceased, before his derangement, had intended to make another will, and had made that intention known, and the will, made, is in conformity to such declared intention, a mere resentment against his son not amounting to a delusion will not vitiate the will. We think, however, that these things ought to have been submitted to the jury so that their minds might have been brought to act upon them.

There is some evidence on both sides of the proposition, and we think that the mind of the jury ought to have been directed by the Court specially to the question whether the will was the offspring of delusion or the result of antecedent intentions of the deceased when he was unquestionably sane. Because it was not done so explicitly as in our judgment it ought to have been done, we reverse the judgment of the Court below and order a new trial.

In regard to the other grounds in the motion for a new trial, I will say that my brother Benning entertains a very decided opinion that the verdict of the jury is contrary to the evidence in the case. He thinks that it was not sufficiently established that the will was executed during a lucid interval; that the weight of the evidence is decidedly against it; and, further, that in the weak condition of the mind of the deceased, the evidence justifies the conclusion, that the will was the result of undue influence. This, however, is not the

Lucas vs. Parsons et al.

judgment of the Court.  While my brother Lumpkin's mind inclines to a concurrence with brother Benning, in his view of the case, he does not so strongly coincide with him as to warrant him in putting his judgment on that ground.

It is with great distrust of my own judgment that I ventured to differ with my brethren in matters of law or fact, but I must say that I differ from them in this instance.  If the son had been disinherited by the father, I should most unhesitatingly have concluded that an act so inconsistent with the strong affection and partiality of the deceased, expressed through his life, when he was unquestionably sane, for his obedient and faithful child, must have been the offspring of a disordered mind, or of a sinister and over-powering influence.

But such is not the case.  He is put on a footing of equality with other children of the testator.  There is evidence of the declarations of the testator, when there was no question of his sanity, that he intended to make just such a will, with the exception that no mention was made of his wife.  But it is not to be presumed that he intended to disinherit her. There is evidence on both sides of the question, of a lucid interval at the time of the execution of the will, which, together with all the testimony in respect to extrinsic influence exerted over the testator, was submitted to the jury.  The will is in accordance with the natural affection and parental duty of the deceased.  These are circumstances which bear strongly on my mind, in forming a judgment in this case.

On the other hand, it is said, and I admit that it is entitled to much consideration, that there are provisions in the first will which are not found in the last, and which seem to have been favorite projects with the deceased.  First, to make his grand-children as nearly equal as possible; and secondly, to secure to the separate use of his married daughters the property he gave to them.  But his intention, in that respect, may have undergone a change, and this discrepancy in the

provision of the wills is not to be imputed to lunacy at the time the last was executed.

These matters are all to be reviewed by the jury, under the exposition of the law by the Court, and we have said as much as it is proper to say under these circumstances.

Judgment reversed.