Mr. Justice Morris
delivered the opinion of the Court:
The caveators have here ' assigned six assignments of error, which are as follows:
(1) The court erred in refusing to permit conversation with Helen C. Carpenter to be introduced in evidence.
(2) In refusing to permit the witness, George A. Heinecke, to give his opinion as to the mental capacity of the deceased.
(3) In refusing to permit the witness, Dr. R. S. Lamb, to testify as an expert.
(4) ' In permitting the appellees to reopen their case and to offer evidence in rebuttal.
(5) In passing the order of June 26,1900, admitting said paper writings to probate and granting letters testamentary thereon.
(6) In overruling the motion to vacate said order admitting said papers to probate and granting letters testamentary thereon.
These assignments will be considered in the -order in which they have been stated by the appellants.
1. As to the first assignment based upon the alleged refusal of the trial court to admit in evidence certain conversations had by one of the witnesses, Mary S. Heinecke, with Helen C. Carpenter, one of the appellees, it is difficult to see why the briefs here should have been incumbered with it. It is true, that, when the question was first asked in regard to these conversations, the proposed testimony was excluded; but immediately thereafter, upon the repetition of the question, the testimony was admitted. There -was, therefore, no error of which the appellants can here reasonably complain; and we understand counsel for the appellants to abandon this assignment in the oral argument had before us. It is certainly untenable.
2. It is complained in the second assignment of error that Dr. George B. Heinecke, one of the caveatees, a practic *512 ing physician in the city of Washington and a grandnephew of the deceased, who was called as a witness on behalf of the caveators, was not permitted to give his opinion as to the mental capacity of the deceased. This witness had testified that he had known the testator all his life; that on one occasion he had seen the testator laughing to himself; that on or about the 13th of February, 1899, during the blizzard, the testator acted peculiarly about the snow in his yard— did not know how it got in there, and went out there and tried to get it removed; and that he was present at the autopsy had of his granduncle’s brain the day after his death. He was then asked this question: “ Doctor, have you formed any opinion from your uncle’s general condition of health and the conditions disclosed by his brain at this investigation, and from all that you know about him yowrself, what his condition of mind was?” Objection was made on behalf of the caveatees to that part of the question which solicited an opinion from the witness from all that he knew about the testator himself, on the ground that no basis had been laid for any such opinion inasmuch as no facts had been stated upon which to base an opinion; and the court sustained this objection, while the witness was permitted freely to answer the remainder of the question.
It is very clear to us that the objection was properly sustained. The question assumes that the witness knew sufficient facts concerning the testator on which to base an opinion that he was not of sane mind; and yet not a single fact is stated, and it appears even that there was a positive refusal on the part of the caveators to interrogate the witness as to any such facts. And yet he is asked to give an opinion upon which he can not be cross-examined, and the value of which the jury would be wholly unable to estimate. The trivial circumstances about the blizzard and the testator’s being seen to laugh to himself at one time, were long subsequent to the time of the execution both of the will and *513 codicil; and even if they were in themselves worthy of serious consideration, it is difficult to see how they could throw any light on the mental condition of the testator in 1896, or even in 1898. The jury was entitled to have the facts on which the witness based his opinion, and they were refused. It would have been error to admit an expression of opinion by the witness under such circumstances. We think that the point was decided in the case of Taylor v. United States, 7 App. D. C. 27, 36. See, also, the case there cited of Insurance Company v. Lathrop, 111 U. S. 612.
3. Error is assigned in the third place on the refusal of the trial court to permit Dr. Robert S. Lamb, called as witness for the caveators, to testify as an expert. The condition of things on which this assignment is based, as developed by the record, was this:
On the day following the testator’s death an autopsy or post mortem examination was made of his brain, at the instance of Dr. George N. Perry, the husband of one of his nieces, with a view of ascertaining the cause of some convulsions or epileptic fits which he had experienced on two several occasions, one about five months and the other about a year before his death. The examination was made by Dr. D. S. Lamb, in the presence of four or five other physicians, all of whom were called by the caveators as witnesses, and all of whom except one failed to find in the condition of the brain any evidence of mental unsoundness. Dr. D. S. Lamb himself, who made the autopsy, testified to the same effect; and the cause of death was pronounced to be ansemia of the brain, which is not a cause of mental unsoundness. One of the physicians, however, who were present, Dr. Robert S. Lamb, a son of the gentleman who made the autopsy, and who seems to have regarded himself as better qualified than the others to find evidence of mental unsoundness in the brain of the deceased man, testified that in his opinion the brain was in an unhealthy condition and that the disease of the testator had been progressing for *514 eight or ten years before his death. He further testified that he had been practicing medicine for nine months; that while he was studying in the hospitals he had seen possibly about two hundred and fifty cases of brain surgery, none of which related to diseases of the brain; that he had seen no operations to determine the mental capacity of a man having a brain such as that disclosed by the examination in this case; and that there was nothing about such as he had seen which would throw any light upon the question of the testator’s mental condition. Thereupon he was asked, “ Whether, in his opinion as an expert physician, from the appearance and general condition of the brain of the testator, it was possible to form a judgment as to the mental capacity of the testator on the 30th day of November, 1896, and also on the 15th day of April, 1898 (the days of the execution of the will and codicil respectively); and if so, what that opinion was.”
This question was objected to by the caveatees and excluded by the court on the ground that the witness had not been shown to be an expert on the subject-matter on which his opinion was asked. And it is this ruling which forms the basis of the third assignment of error.
It is wholly unnecessary to discuss this point. The witness was so clearly incompetent to testify as an expert that it would be a waste of time to consider the question at any length. Moreover, we have held in the case of Lansburgh v. Wimsatt, 7 App. D. C. 271, that, when a witness is called as an expert, the question of his competency or of his possession of the requisite qualifications is'a preliminary one for the trial court, whose decision thereon is conclusive, unless it is clearly shown to have been founded in error of law or fact. So far from there having been error here, it would have been patent and palpable error on the part of the trial court to have held this witness qualified to testify as an expert.’
4. The fourth assignment of error is that the appellees *515 were permitted by .the trial court to reopen the case and to offer testimony in rebuttal.
This assignment is scarcely sustained by the record before us. But the complaint seems to be that, inasmuch as by the order of the probate court, the caveatees were made plaintiffs and the caveators defendants, it was incumbent on the former in their testimony in chief not only to show the execution of the alleged will and codicil by the attesting witnesses, but also to go fully into their case and to show that at the dates of their execution the testator was capable of executing a valid deed or contract; and it is intimated that this was not done. The point is assumed to have been reserved by an objection which, on the record, would appear to have been made at the conclusion of the w'hole testimony to all the testimony introduced on behalf of the caveatees to show that the testator was of sound and disposing mind, but which in argument is stated to have been duly interposed according as the testimony was offered.
The bill of exceptions is manifestly incomplete, inasmuch as it fails to show the order in which the testimony was adduced. It is wholly silent as to what testimony was offered in chief by the caveatees. In fact, it does not show that they offered any testimony whatever in chief. The record would rather indicate that at the opening of the trial the caveators had usurped the place of the caveatees as plaintiffs; and the testimony, which appears in the record for the caveatees, does not purport to be testimony in rebuttal. But if the caveatees did in fact open the case as plaintiffs, and if the testimony on their behalf which appears in this record was only their testimony in rebuttal it is very plain that much of it is strictly in rebuttal of the testimony of the caveators, as, for example, the expert testimony of the physicians. A general objection, therefore, to all of it in bulk will not avail. For the very reason that they were entitled to open the case as plaintiffs, they were entitled to take testimony in rebuttal; every plaintiff *516 is so entitled. And the objection of the caveators, if they had objection, should not have been to the introduction of testimony in rebuttal, but to the introduction of such testimony in rebuttal as should have been offered in chief; and this should have been pointed out and specific objection made to it.
But it is well settled that this matter of the order of proof is within the discretion of the trial court, and that such discretion is not a subject of review by an appellate court, unless for abuse of it, which certainly is not here shown. It is not apparent that the caveators have been deprived of any right by the order which was followed in this case. Rich v. Lemmon, 15 App. D. C. 507; Overby v. Gordon, 13 App. D. C. 406.
Moreover, the practice which seems to have been followed here was the usual and proper practice. Rich v. Lemmon, 15 App. D. C. 507; Brown v. Ward, 53 Md. 392.
5. The fifth assignment of error requires no consideration from us. It is merely a general allegation that the court below erred in admitting the paper writings in question to probate and granting letters testamentary thereon. If any of the previous specifications of error had been well founded, this consequence might follow. But as we hold that they are not well founded and we find no other error in the record in this connection, this fifth assignment can not be regarded as of any force.
This disposes of all the assignments of error alleged in connection with the first appeal taken by the caveators, that from the order of the court below admitting the will and codicil to probate.
6. There remains, however, the sixth assignment based on the refusal of the court below to vacate that order or decree; and this raises the question of the effect of the disqualification of a juror upon the proceedings, when such disqualification has not been discovered until after verdict and judgment thereon.
*517 Section 872 of the Revised Statutes of the United States for the District of Columbia, in part merely affirming the rule of the common law, provides that—
“ No person shall be competent to sit as a juror unless he be a citizen of'the United States, a resident of the District of Columbia, over twenty-one and under sixty-five years of age, and a good and lawful man, who has never been convicted of a felony or misdemeanor involving moral turpitude.”
As already stated, one of the jurors who sat in this case is alleged to have been under twenty-one years of age and to have been repeatedly convicted of petty larceny in the police court of the District of Columbia; and substantial proof was adduced of the allegation, which is not sought to be controverted by the appellees. Undoubtedly, unless this testimony .can be successfully controverted, and there seems to be no good reason to suppose that it can be, the juror in question was wholly disqualified to act as a juror. It is strange that the commissioners, who are charged by law with the preparation of the jury list, should have permitted the name of such a man to be entered on their list; and it is still more strange that no steps seem to have been taken by anyone to have him prosecuted for perjury. The crime of perjury is too frequently committed in judicial proceedings; and it behooves those who have been injured by such perjury to call the attention of the courts and of the prosecuting officers of the Government to the cases wherein it has been committed. The fountains of justice should not be allowed to be polluted with impunity by such crimes committed in the course of its administration.'
But while the jury in this case may have been tainted by the presence on its panel of one repeatedly convicted of petty larceny and shown to have been guilty of perjury, it does not necessarily follow that the caveators were entitled to have their motion allowed. That was a matter within the sound discretion of the trial court. The parties were *518 entitled under the law to have a jury of good and lawful men, possessed of all the qualifications prescribed by the law, for the trial of the issues between them; but it is the duty of parties themselves to aid in the selection of a competent jury. For that purpose the lists are published in advance, ample time is given for investigation, opportunity is afforded for the examination of the jurors, as to their fitness to act as such, and a,right to challenge for cause is permitted to the most liberal extent. At the. opening of the cause and before the jury is impanneled and sworn, is the proper time for the examination of the qualification of jurors, and not afterwards. If no effort has been made at that time to determine such qualification, it is not ordinarily in the interest of justice that the investigation should be allowed to be made after the trial has been had, the verdict rendered, and the jury discharged.
It is true that here there had been a preliminary examination by the court at the beginning of the term, and that the juror now impeached as a convict had falsely stated that he was qualified, thereby lulling the caveators and others into a false sense of security. But the records of the police court would have shown the falsity of the juror’s statement, and they were open to the public inspection. That the caveators did not know the fact which they evidenced was their misfortun'e; it would seem that they would be chargeable in law, under the circumstances of this case, with knowledge of them.
It is a potent consideration, however, that the irregularity in the constitution of the jury is not shown to have been . detrimental to the interest of the caveators; for it is well settled law in this jurisdiction, under repeated adjudications by the Supreme Court of the United States, that even a plain and palpable error will not suffice to cause the reversal of a judgment, if the party against whom the judgment is rendered has not been prejudiced thereby. Lancaster v. *519 Collins, 115 U. S. 222; Hughes v. Heyman, 4 App. D. C. 444; Posey v. Hanson, 10 App. D. C. 496.
It is not apparent in the present instance that there has been any prejudice to the rights of the appellants by the introduction of a disqualified juror into the jury box. Most, if not all, of the cases cited, in which verdicts and judgments have been set aside on the ground of such disqualification, have been cases in which jurors have been interested in the result of the suit, and where, therefore, the law raised the insuperable presumption of the absence of impartiality. But there is no pretense in this case that the objectionable juror was not impartial. Moreover, the record purports to contain all the testimony adduced in the case. It is conceded that this testimony contains not a scintilla of evidence in support of the charges of fraud, undue influence, circumvention, or coercion made by the caveators; and it is perfectly clear to us, as it was to the trial court, while not conceded by the appellants, that the charge of mental unsoundness is wholly unsustained and without any support whatever in the testimony. It is intimated in the order appealed from that the trial court would have peremptorily directed a verdict on this issue as well as on the others, if it had been requested so to do; and we think that it would have been fully justified in such direction. Looking, therefore, to the substantial ends of justice, and not merely to form and technicality, we are unable to see how the caveators have been prejudiced, or how a new trial, with an unimpeachable jury, would subserve their purpose further than as it would harass the caveatees, who may well be presumed to have been equally ignorant of the disqualification of the juror mentioned.
But the principal ground on which the sixth assignment of error must be regarded as untenable, is that the order appealed from is not an appealable order. In accordance with the well established rule of the common law and with *520 the general rule prevailing everywhere unless changed by statute, we have held in several cases that the rulings of a trial court on motions for a new trial, applications for a rehearing in equity, and motions to vacate orders, judgments, or decrees, are within the sound discretion of the court to which the motions are addressed, and are not in general subject to review by an appellate court. Dist. of Col. v. Wilcox, 4 App. D. C. 90; Thomas v. Presbrey, 5 App. D. C. 217; Dist. of Col. v. Cemetery, 5 App. D. C. 497; Brown v. Bradley, 6 App. D. C. 207; Chester v. Morgan, 11 App. D. C. 435; St. Clair v. Conlon, 12 App. D. C. 161; Babbington v. Brewery Co., 13 App. D. C. 527. The motion to vacate the order which had been entered in this case was not different in its tenor and effect from a motion for a new trial. We think the discretion of the trial court was wisely exercised in denying it. See, also, Johns v. Hodges, 60 Md. 215; and Roseborough v. State, 43 Tex. 574.
Being of the opinion that there is no error disclosed by the record, we must conclude that the orders appealed from must be affirmed, with costs. And it is so ordered.