THE AMERICAN SEAMAN'S FRIEND SOCIETY and others, *appellants, vs.* HESTER HOPPER and others, *respondents.*

Evidence held sufficient to warrant the setting aside of a will on the ground of mental delusion in the testator, in respect to the natural objects of his bounty.

APPEAL from a decree of the surrogate of the county of New York, declaring an instrument propounded as the last will and testament of Charles Hopper, deceased, to be invalid on the ground of his want of mental capacity.

*B. J. Blankman,* for the appellants.

*J. T. Brady* and *B. Galbraith,* for the respondents.

LEONARD, J. The surrogate has found against the validity of the will of Charles Hopper, deceased, on the ground of his want of mental competence.

Had the testator made a natural or usual disposition of his property, his mental capacity would not have been questioned. But the will in this case, disregarding external facts and circumstances narrated by the witnesses, was unnatural, and, in part, against the express provisions of an act of the legislature of this state. (*Sess. L.* 1860, *chap.* 360, *p.* 607.)

The monomania, or mental delusion of the testator, if any existed, related directly to the subject of the devise of his property to certain persons who were his relatives, and to whom, up to a short period before his death, he had declared it to be his intention to give his property.

His mind was sufficient for the purpose of making a will, unless it was warped or deluded in respect to the natural objects of his bounty.

If we except the apprehensions and convictions of the testator, or those which he professed to entertain in respect to the intentions and acts of his nephews towards him, it will be impossible to discern, from anything which he said or did,

the want of mind or memory sufficient to make a valid disposition of his estate by will.

The change in his testamentary intentions appears to have been caused in the first instance by his nephews having taken part against him and in favor of his wife in an action brought by her for a divorce and alimony, on the ground of his cruel treatment, which action was finally prosecuted to judgment against him. The opinion of the testator in regard to the actual conduct of his nephews in this respect was well grounded. They were witnesses against him, and the advisers of his wife, and took decided ground against their uncle during this unhappy controversy, impelled, no doubt, by a sense of justice and truth. Here was no delusion by the testator. However unjust his anger against his nephews for this cause, it raises no foundation for the suspicion of mental incompetency.

One of the nephews sometimes indulged in offensive language to his face, and the other in offensive language which was reported to the testator by tale bearers, and contributed to exasperate an irritable state of mind.

For two or three years preceding the date of his will, the testator expressed the belief that his nephews were conspiring to take his life ; and finally, that one of them caused his death by putting him upon a hot stove.

My conclusion, from the evidence on this subject, is that the testator was under a mental delusion in this respect.

The testimony would not warrant the submission of the case to a jury, if the testator were living and had brought an action for an assault and battery against his nephew for throwing him on the stove, and thereby causing him an injury.

There is no evidence to warrant the belief by the testator that his nephews intended to administer poison or chloroform to him, or to cause him to be thrown overboard on a fishing excursion, or that they had conspired to attempt his life in any manner.

If these delusions stood alone, I should hesitate to act upon them, by holding the will invalid. But there were other delusions of a grave nature. The testator conceived that there was a building in Broadway with the sign of a human eye ; that his wife, although far advanced in years as well as himself, was guilty of conjugal infidelity—improbable not only as respects his wife, but also in respect to the venerable gentleman with whom he supposed that she practiced her amours.

It appears most probable that this latter delusion would have prevented any testamentary provision in favor of his wife, had not the testator been advised by legal counsel that such omission would endanger the validity of his will.

The aversion to his nephews was so great that he was easily influenced to make an ample bequest to his wife, in addition to dower, to avoid the danger of any of his estate eventually benefiting them. A similar motive has induced him to omit to make any provision by his will for the benefit of his sister.

Had the surrogate sustained the will, in disregard of the evidence of such mental aberrations, directly affecting the intentions of the testator, so distinctly expressed before the development of these delusions, I could not have concurred in his conclusion. His decision on this question is now in conformity with my own views, and I have no reason for reversing it or sending the question to a jury. I do not in the least doubt that the verdict of a jury would produce the same result, but I do not esteem it necessary to subject the case to that test. The question of undue influence was not pressed at the argument, nor was it considered of any weight by the surrogate, and appears really to have no foundation in fact.

I am for affirming the judgment of the surrogate, with costs.

GEO. G. BARNARD, J. concurred.

SUTHERLAND, J. (dissenting.) I have examined the im-
mense mass of evidence in this case with great care.

The will of Charles Hopper appears to have been formally·
executed and witnessed in the manner required by the stat-
ute. The sole question is as to the competency (mental
capacity) of Charles Hopper to make a will, at the time the
will was executed. This is not a question of law, but is a
question of fact; and considering that the evidence presented
by the case on this question is very conflicting, I think it a
peculiarly proper case for awarding, under the statute (3 *Rev.
Stat. 5th ed.* 151, § 73) a feigned issue to try the question of
competency.

Decree affirmed.

[NEW YORK GENERAL TERM, November 7, 1864. *Leonard, Geo. G. Barnard*
and *Sutherland,* Justices.]