OWENS' APPEAL in the matter of PRITCHARD'S WILL.

WILL.   (1, 2) *Effect of verdict in issue upon probate of.*   (2, 3) *Nuncupative, not allowed where* rogatio testium *not proved.*

1. On appeal to the circuit court from an order of the county court admitting or refusing to admit a will to probate, the verdict of a jury has substantially the effect of a verdict on a feigned issue in chancery. 26 Wis., 104; 32 id., 557.

2. Where, therefore, the county court refused to admit to probate an alleged nuncupative will, and, on appeal to the circuit court, the jury, *by direction of the court,* found that there was no valid nuncupation because there was no sufficient *rogatio testium,* this court will affirm the decision of the court below, if it is of opinion that the testimony fails to prove a valid nuncupation, even though there may have. been *some testimony tending to prove* such a nuncupation.

3. Upon all of the testimony in this case (for which see the opinion), this court is of the opinion (in view of the ruling in *Dawson's Appeal,* 23 Wis., 69), that there was no sufficient *rogatio testium,* especially as the evidence does not otherwise clearly show that the words spoken by the decedent in the presence of the witnesses were intended by him as a will.

APPEAL from the Circuit Court for *Iowa* County.

This is a proceeding originally commenced in the Iowa county court, by one *Pierce E. Owens,* to probate an alleged nuncupative will of one Hugh Pritchard, deceased. After a hearing, that court made an order refusing to admit the same to probate; whereupon *Ellis Owens* (one of the legatees therein) appealed to the circuit court from such order. Although no formal issue was made up, a jury was called and sworn in the circuit court to determine the questions of fact involved in the proceeding. After the testimony was all in and the matter submitted by the respective parties, the court instructed the jury that there was not evidence to show that the persons present at the time of declaring the alleged will were asked by the so called testator to take notice as witnesses that he was making his will, or words to that effect, and directed the jury to ·

return a verdict against the appellant. A verdict was returned according to such direction, and the court thereupon made an order affirming the order of the county court. The same appellant, *Ellis Owens*, now appeals to this court from such order of affirmance.

*Wm. E. Carter*, for appellant, argued, from the testimony, that there were present all the elements of a valid nuncupative will; that Pritchard was of sound mind; three witnesses proved the will; he, in their hearing, requested their presence to hear it; said it was his will, and, by it, disposed of his estate; it was made in his own dwelling, and was proved in due time on due notice. Counsel distinguished the case from *Dawson's Appeal*, 23 Wis., 69, and the cases there cited, and contended that the words used by Pritchard amounted to an express request to witness his will, at least "to that effect." R. S., 1858, ch. 97, sec. 6. He understood that he was making his will, and the witnesses so understood, and that is sufficient. *Hatcher v. Millard*, 2 Cold. (Tenn.), 30.

*Moses M. Strong*, for the respondent:

Our statute upon this subject is a re-enactment of Car. 1, ch. 3, § 19 (Bac. Ab. Tit., Wills and Testaments, E.), and the construction which the English statutes had received at the time of its adoption by us is a part of the law. Const. of Wis., art. XIV, sec. 13; Cooley on Const. Limitations, 52; *Attorney General v. Brunst*, 3 Wis., 787; *Prince v. Hazelton*, 20 Johns., 502; *Cole v. Mordaunt*, 4 Ves., 196, note *a; In re Yarnall's Will*, 4 Rawle., 46; 1 Redfield on Wills, 189, 190; *Winn v. Bob*, 3 Leigh., 140; *Reese v. Hawthorn*, 10 Grat., 548; *Boyer v. Frick*, 4 Watts & Serg., 357; *Porter's Appeal*, 10 Penn. St., 254; *Hans v. Palmer*, 21 id., 296; *Bronson v. Burnett*, 1 Chand., 136. Great strictness of proof is required to show that all the requisites of the law are complied with. *Rankin v. Rankin*, 9 Ired., 156. To show the *animus testandi. Dockum v. Robinson*, 6 Foster (N. H.), 372; *Winn v. Bob, supra; Reese v. Hawthorn, supra; Gibson v. Gibson*, Walker R. (Miss.), 364;

*Dorsey v. Sheppard*, 12 Gill & Johns., 192. To show the *rogatio testium. Remsen v. Brinkerhoff*, 26 Wend., 325; *Ex parte Beers*, 2 Bradf. Sur., 163; *Rutherford v. Rutherford*, 1 Den., 33; *Chaffee v. Bapt. Miss. Convention*, 10 Paige, 85; *Seymour v. Van Wyck*, 6 N. Y., 120; *Bennett v. Jackson*, 2 Phillim, 190; *Parsons v. Miller*, id., 194; *Arnett v. Arnett*, 27 Ill., 247; *Winn v. Bob, supra; Dawson's Appeal*, 23 Wis., 69. The will must be proved by three or more witnesses. No three here agree as to words used by Pritchard. *Burnett v. Jackson; Parsons v. Miller; In re Yarnall's Will, supra; Weeden v. Bartlett*, 6 Munf. (Va.), 123; *Talley v. Butterworth*, 10 Yerger, 501.

LYON, J. A jury was impaneled and sworn in the circuit court on the trial of the matters involved in this proceeding. This was doubtless done pursuant to the provisions of sec. 28, ch. 117, R. S. (Tay. Stats., 1314, § 28). In the *Jackman Will Case*, 26 Wis., 104, and again in the *Chafin Will Case*, 32 id., 557, it was held that in such cases the verdict has substantially the effect of a verdict on a feigned issue in chancery, and hence, if it be clearly contrary to the weight of evidence, it is error to refuse a new trial, although there may be testimony tending to sustain the verdict. On the same principle it must be held, in the present case, that if the testimony on the hearing in the circuit court fails to prove a valid nuncupation, the order refusing to admit the alleged will of Hugh Pritchard to probate should be affirmed, although there may be some testimony tending to prove such nuncupation. Hence, we are called upon to review the evidence, the same as though no jury had intervened.

It satisfactorily appears from the evidence that the alleged will was made on Monday morning, August 15, 1872; that both Pritchard and his wife (who were elderly people) were then very sick; that Mr. Pritchard did not expect to recover; and that Mrs. Pritchard died during the afternoon of the same Monday, and Mr. Pritchard died in the evening of the follow-

ing Wednesday. It does not appear that they left any children or near relatives except a sister of the latter, and the persons (eight in number) who would take under the will, if established, were relatives of Mr. Pritchard, and might reasonably expect to be the objects of his bounty. The value of the estate is but little, if any, over one thousand dollars.

On the morning of Monday, August 15, 1872, Mr. Pritchard was repeatedly and persistently importuned by his attendants, Jones and Hughes, particularly the former, to make a testamentary disposition of his property. It does not appear that either of these men expected any advantage from any will Pritchard might make. It is but justice to them to say that, so far as the case shows, their motives were entirely disinterested. The deceased, after being thus importuned, said to Jones that his will was that Pierce Owens' children should have what was left after him. Jones then asked him if witnesses to his will had not better be called in, and the deceased replied, "Yes, call them in." We can hardly find from the testimony that the deceased made any independent request to that effect. Jones thereupon called in five or six persons, and in their presence asked the deceased what he calculated to do with his property after his death. One witness testified that his answer was, "All that is after me, all that I have, goes to Pierce Owens' children." Another witness testified that his reply to Jones' question was that he calculated it all to go to Pierce Owens' children, providing the old lady (meaning his wife), should die first. Pierce Owens' testified that the deceased said "he would give all of his property to Pierce Owens' children and his old woman," meaning Mrs. Pritchard. John Hughes, who was present at the alleged nuncupation, testified that Jones asked deceased who should have what was left, and he replied, "Pierce Owens' children;" and that deceased had told him before, a great many times, that he wanted Pierce Owens' children to have what he had left. It may here be stated that this proceeding was commenced in the county court on the

duly verified petition of Pierce Owens, in which it is positively averred that the nuncupation was in these words : "After my death, and after the payment of all my debts and funeral expenses, I give to Pierce Owens and his children all my real estate and personal property." All of the witnesses who gave testimony on the hearing were called by the appellant.

: No witness testified that the deceased said anything whatever to the persons called by Jones as witnesses. All there is in the testimony from which a sufficient *rogatio testium* can possibly be inferred, is the fact that Pritchard consented to have witnesses to his will called in. We are entirely unable to hold that this fact alone proves, "that the testator at the time of pronouncing the same [the alleged will], did bid the persons present, or some of them, to bear witness that such was his will, or to that effect." R. S., ch. 97, sec. 6 (Tay. Stats., 1204). Especially are we unable so to hold in view of the decision of this court in *Dawson's Appeal*, 23 Wis., 69. In that case, when the testatrix was about to speak the alleged testamentary words, she asked a witness who was in the act of leaving the room, to return and pay attention to what she said, and also called upon all of the persons present (three in number) to witness what she said, and then spoke the words which were claimed to be her last will and testament, nuncupative. I thought, and so held at the circuit, that this was a valid nuncupation. But this court, on appeal, was unable to find in the facts proved, a valid *rogatio testium*, or even the *animus testandi*.

In the present case, after great importunity — *tormenting*, as one witness expressed it, — Pritchard consented that witnesses to his will be called in, and then, after being again pressed to say what disposition he would make of his property, without saying anything to the witnesses, or, so far as appears, noticing their presence, he uttered the words sought to be established as his will.

It seems to us that there is no escape from the conclusion that, if there was no valid *rogatio testium* in the Dawson case,

there is none here. In that case the alleged testatrix herself called the attention of the witnesses to her words; and in this case Pritchard sent Jones to call in witnesses to hear his words. No element of a good *rogatio testium* seems to be wanting in that case, which is not also wanting here. I think it idle to deny that there are adjudged cases which will sustain the proposition that the acts and words of Mrs. Page in the Dawson case were a good *rogatio testium*, as were also the acts and words of Mr. Pritchard in the present case. We must, however, follow the decision in the former case, by which we consider ourselves bound, and hold that the alleged nuncupation by Mr. Pritchard is not proved, because this essential element of a valid nuncupation is wanting.

The learned counsel for the appellant claims that the decision of this court in *Dawson's Appeal* was controlled by the fact that the court failed to find sufficient proof of an *animus testandi* on the part of Mrs. Page, and that, in this case, Pritchard intended a testamentary disposition of his property ; and he argues therefrom that such decision is not applicable, and does not rule this appeal.

If such difference exists, the argument is very strong, perhaps conclusive. For certainly acts and words of a person *in extremis*, accompanied with a present testamentary intention, may well be held to constitute a good *rogatio testium*, when, were such intention wanting, it would be held otherwise. Indeed, without such intention there can be no valid *rogatio testium ;* for how can a person call witnesses to his will when he does not intend to make a will? Of course, the *form* of doing so may be gone through with in the absence of the testamentary intent ; but it would be mere form, entirely inoperative and valueless for any purpose whatever.

But is there any substantial difference in the two cases as respects testamentary intention? Were it not for the decision of this court to the contrary, I should have no difficulty in holding now, as I held at the circuit, that Mrs. Page intended a

testamentary disposition of her property; and but for that decision, I might hold that Pritchard intended the same thing. I think, however, that such intent by Pritchard does not appear any more clearly in this case, than a like intent by Mrs. Page was made to appear in the Dawson case. There is much in the testimony tending to produce grave doubts whether Pritchard intended that the words in question should operate as a will. He said nothing, on that Monday morning, relative to the disposition of his property, that he had not repeatedly said before that time, and probably before the commencement of his last sickness. Besides, several witnesses testified that at or about the time of speaking such words, Pritchard said that he had already made his will, and that it was recorded at Dodgeville. There is testimony, also, that after the alleged nuncupation, and after the death of Mrs. Pritchard, he was still importuned by Jones about the disposition of his property, and further that he expressed an intention to give Jones a wagon. There is much in this testimony to sustain the hypothesis that all that was said by Pritchard on the Monday morning in question, had reference to a will already made, or which he seemed to think he had made, and was not intended as a present testamentary disposition of his property.

But it is unnecessary to discuss further the points of similarity between the two cases. Our conclusion is that the circuit judge correctly held that this case is ruled by the decision of the *Dawson Appeal.*

*By the Court.* — The order appealed from is affirmed.