BALLANTINE, Executor, etc. vs. PROUDFOOT.

*January 13 — February 3, 1885.*

WILLS: PRACTICE. *(1) Effect of special verdict on appeal from probate: Form of questions. (2, 3) Capacity of testator: Insane delusions.*

1. Upon the trial in the circuit court of an appeal from an order of a county court admitting a will to probate, the verdict of a jury is not binding upon the court even as to the facts, and the form of

the questions submitted is therefore of less importance than in an action at law.

2. In the execution of a will it is essential that the testator shall understand the nature of the act and its effect; shall be able to comprehend and appreciate the claims which he ought to regard and satisfy; that no disorder of mind shall poison his affections, pervert his sense of right, or prevent the exercise of his natural faculties; and that no insane delusion shall influence his will in disposing of his property, and bring about a disposal of it which, if his mind had been sound, would not have been made.

3. Upon the evidence in this case it is *held* that when the instrument in question was executed, the testatrix was laboring under insane delusions as to the conduct and motives of her daughter and heir at law, which influenced her in the disposition of her property, and that she was therefore incapable of making a will.

APPEAL from the Circuit Court for *Grant* County.

*James Ballantine*, the executor named in the last will and testament of Margaret Stewart, deceased, presented that instrument for probate in the county court of Grant county. The will was executed January 2, 1877, five days before the death of the testatrix. It purported to devise and bequeath all her estate, real and personal, after the payment of debts, etc., to the four children of said executor. *Mary Proudfoot*, the only child and heir at law of the deceased, objected to the probate of the will on the grounds, (1) that it was not legally executed; (2) that deceased at the time of its execution was weak of mind and had not sufficient mental capacity to execute a valid will; (3) because it was procured to be signed by fraud, and the same was not her voluntary act; (4) because, when she executed it, deceased was not in possession of her free mental faculties, but was under undue influence, and this will was obtained from her by undue influence.

The county court admitted the will to probate and the contestant appealed to the circuit court. That court reversed the judgment of the county court, and adjudged that the instrument in question was not the last will and testament of the

deceased, and should not have been admitted to probate as such. From that judgment the executor appealed. Other facts will sufficiently appear from the opinion.

For the appellant there was a brief by *Bushnell & Watkins,* and oral argument by *Mr. Bushnell.* They contended, *inter alia,* that, under the testimony and the law as established by the decisions of this court, it is clear that the testatrix was of sound mind and was never otherwise. *Chafin Will Case,* 32 Wis. 557; *Will of Blakely,* 48 id. 294; *Holden v. Meadows,* 31 id. 284; *Burnham v. Mitchell,* 34 id. 117; *Lewis's Will,* 51 id. 101; *Will of Smith,* 52 id. 543; *Delafield v. Parish,* 25 N. Y. 29.

*George Clementson,* for the respondent, to the point that " whenever it appears that the will is the direct offspring of the partial insanity or monomania under which the testator was laboring, it should be regarded as invalid though his general capacity be unimpeached," cited *Greenwood's Case,* in *White v. Wilson,* 13 Ves. Jr. 88; *Drew v. Clark,* 1 Addams, 279; *S. C.* 3 id. 79; *Lucas v. Parsons,* 24 Ga. 640; *Florey's Ex'rs v. Florey,* 24 Ala. 241; *Jenckes v. Court of Probate,* 2 R. I. 255; *Johnson v. Moore's Heirs,* 1 Litt. 371; *Stanton v. Wetherwax,* 16 Barb. 259; *Cotton v. Ulmer,* 45 Ala. 378; *S. C.* 6 Am. Rep. 703; *Will of Cole,* 49 Wis. 182.

COLE, C. J. The learned counsel for the proponent of the will insists that the real questions at issue were not properly submitted to the jury, nor determined by the court. The circuit court submitted the question whether the proposed will was executed as the free act and deed of Margaret Stewart, which question the jury answered in the negative. In the judgment it is recited that the court, after having taken time to consider of its judgment on the verdict, finds that the will was not executed as the free act and deed of Mrs. Stewart, therefore orders and adjudges that the same ought not to be admitted to probate as such. The propo-

nent's counsel requested the court to submit the questions: (1) Was the testatrix, when she executed the will, of sound mind? (2) Was the execution of the will by the testatrix procured by any undue influence? (3) Was such execution procured by any undue influence exercised by *James Ballantine*, who was the proponent of the will?

In this class of cases it has been held that the verdict of a jury on questions submitted has essentially the same effect that it had upon a feigned issue in chancery. It is not conclusive and binding upon the court even as to the facts. *Jackman Will Case*, 26 Wis. 104; *Chafin Will Case*, 32 Wis. 557; *Owens' Appeal*, 37 Wis. 68. This being the case, the precise form of the questions submitted is of less importance than in actions at law, because the court must determine from the whole evidence whether the proposed will should be admitted to probate. If the evidence shows that the person executing the will was wanting in testamentary capacity to make a disposition of his property; or was induced by some undue influence to execute it; or that it was the offspring of some insane deulsion in respect to those having claims upon his bounty, the will must be set aside, notwithstanding a verdict which sustains it. In this case it is impossible to tell from the record whether the verdict was based on the ground that the evidence showed that the will was the result of undue influence, or that the testatrix had not the requisite capacity to execute a will, or that she was laboring under some insane delusion in regard to her daughter's treatment of her. The jury found that the will was not the free act and deed of Mrs. Stewart, which might imply that she was induced to execute it through some undue influence exercised over her by some one. The more probable supposition is that the jury were satisfied that Mrs. Stewart had taken up an insane delusion in regard to her daughter when she disinherited her, and that this led her to execute the will giving her property to the propo-

nent's children,— a thing she would not have done but for this delusion under which she acted.

The evidence conclusively shows that, for a considerable period and up to the time of executing the will, Mrs. Stewart labored under the strange delusion that her only living child and the husband of that daughter had ill-treated her; had purposely made her uncomfortable and unhappy while she lived with them; had permitted their young children to annoy her in different ways, and had even attempted to poison her. Several of the proponent's witnesses testified to conversations had with the testatrix, in which she complained of her daughter and son-in-law's treatment of her, and said that she believed they proposed to poison her or make way with her in some way. So impressed was she with this notion that she would not eat food which her daughter or her family brought to her, and often repeated the story that she had thrown a piece of suspected meat, which had been given her to eat, to a dog, and that the meat poisoned the dog. It is not necessary to go over this testimony in detail. Suffice it to say that it establishes the fact, beyond doubt, that Mrs. Stewart was laboring under these insane delusions as to the conduct and motives of her daughter and son-in-law, and that these delusions, in all probability, influenced her in disposing of her property. It is needless to inquire whether this mental disorder was brought on by the sun-stroke, which some of the witnesses say she had some years prior to her death, or whether it was the result of constitutional irritability and weakness; but it is plain that her affections had become so alienated from her only child, and her sense of right so perverted, that she repeatedly imputed to her daughter the wish to poison her. This presents a clear case of unsoundness of mind, caused by insane delusions, which influenced and induced the testatrix to give her property to those not akin to her and having no claims upon her. In the execution of a will

it is essential that the testator shall understand the nature of the act and its effects; shall be able to comprehend and appreciate the claims which he ought to regard and satisfy; and that no disorder of mind shall poison his affections, pervert his sense of right, or prevent the exercise of his natural faculties; that no insane delusion shall influence his will in disposing of his property and bring about a disposal of it, which, if his mind had been sound, would not have been made. COCKBURN, C. J., in *Banks v. Goodfellow*, L. R. 5 Q. B. 549; also, *Boughton v. Knight*, L. R. 3 P. & D. 64; 1 Redf. on Wills, 70 *et seq.*

It is said by proponent's counsel that the testimony clearly shows that the disposition made by the testatrix of her property was in accordance with her wishes and intentions as expressed to various persons. This is true; but this shows more distinctly how long and entirely the testatrix had become subject to the insane delusion which controlled her action up to the time of her death. She certainly seems to have lost all affection for her daughter and her daughter's family, in consequence, probably, of having taken up this utterly groundless notion that her daughter was trying to poison her. She carried her dislike to that extent that she did not wish her daughter to see her while alive. In view of these incontestable facts, we must consider her insane and incapable of making a will, notwithstanding she may have been of a sound mind in other respects. See *Greenwood's Case*, referred to by the Lord Chancellor in *White v. Wilson*, 13 Ves. Jr. 89; *Lucas v. Parsons*, 24 Ga. 640; *Cotton v. Ulmer*, 45 Ala. 378; *American Seaman's Friend Soc. v. Hopper*, 43 Barb. 625.

It is rare that a mother, without the greatest provocation, entertains such an aversion to a daughter that she refuses to see her in her last illness. And yet, but a few hours before she died, Mrs. Stewart was asked if her daughter should

not be sent for, and she replied that she did not wish to see her daughter; that the Proudfoots might come and look upon her after she was dead. Such unnatural feelings are so contrary to human nature that we are inclined to account for them on the ground that the mother at the time was not herself, but was laboring under some mental disorder. And such, we are confident, was the case with Mrs. Stewart. For years, and up to the time of her death, she had been laboring under an insane delusion in regard to her daughter and her daughter's family. It is said the testatrix had cause 'for the dislike she manifested for the Proudfoots; that they had assailed her, and said things affecting her character for chastity. There is evidence to that effect in the case, but the Proudfoots deny making any remarks of that character about their mother. We will not dwell upon this point or stop to inquire what the real truth was. This does not seem to have been the real cause of Mrs. Stewart's aversion to the Proudfoots; but she really believed they wanted to get her out of the way, and were trying to poison her. This is the secret of her unnatural feelings towards them, and shows that she was mentally unsound, or was laboring under an insane delusion when she made her will.

Some objections are taken to the rulings of the court admitting or excluding testimony. Also, it is said, the court erred in refusing proper instructions asked on the part of the proponent and in the charge given. But we see nothing in any of these rulings which should work a reversal of the judgment of the court below. There is nothing in the proposed testimony, which was excluded, which could possibly change the conclusion, derived from the entire proof, that the will was the offspring of an insane delusion on the part of the testatrix as to the conduct and motives of her daughter and son-in-law, and there is certainly no error in the charge which could have prejudiced the case of the pro-

ponent. We fully agree with the circuit court in the opinion that the will of Margaret Stewart should not be admitted to probate, and that it is invalid.

The judgment of the circuit court is therefore affirmed. The taxable costs and disbursements of both parties in this court will be paid out of the estate.

*By the Court.*— It is so ordered.