CASE 61—ACTION BY WILLIAM LAYER CONTESTING WILL OF ADAM C.
LAYER—APRIL 17.

# Layer v. Layer and Others.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR THE PROPOUNDERS AND CONTESTANTS APPEAL. RE-
VERSED.

WILL CONTEST—OBJECTION TO JURISDICTION—INSANE DELUSION—IN-
STRUCTIONS TO JURY.

Held:  1. Upon appeal to the Circuit Court from an order of the
County Court probating a will, the court properly refused to per-
emptorily instruct the jury to find against the paper in contest
on the ground that the evidence did not show that the testator
resided in the county in which the proceeding was pending,
there being no plea of want of jurisdiction in the County Court.

2. Where there was some evidence tending to show that testator, the
father of contestant, had conceived the notion that contestant
was not his son, and entertained a violent antipathy towards
him, calling him vulgar names, treating him cruelly, and driv-
ing him from home, the court should have instructed the jury,
on contestant's motion, that if deceased, at the time of the exe-
cution of the paper in contest, was under an insane delusion that
contestant was not his son, and was of unsound mind on this
subject, and by reason of such unsoundness of mind made a dif-
ferent disposition of his estate from that he would otherwise
have made, they should find the paper in contest not to be his
last will and testament, though his capacity was good on other
subjects; and the failure to so instruct the jury was prejudicial
error, however strong may have been the evidence showing
soundness of mind, and though the usual instruction as to
what constitutes soundness of mind was given.

3. The court should, on another trial, change the phraseology of the
instruction given so as to direct the jury to find the paper in
contest to be the will of deceased, unless he was of unsound
mind at the time it was executed, instead of telling them that
they must believe deceased was of sound mind in order to find
the paper to be his will.

F. & R. J. HAGAN AND E. E. McKAY, ATTORNEYS FOR APPELLANT.

Adam C. Layer died in 1896 and left surviving him a widow,
and three children, one son, and two daughters. He willed his

Layer v. Layer and Others.

entire estate about $30,000, to his wife, as long as she remained his widow, and at her death all his property remaining to go to his two daughters, and they were to pay their brother $100. In the event one daughter should die, the other got all. He died suddenly, sitting in a bar room.

The son contests the will on the grounds that the father entertained towards him, from early childhood an aversion that grew more and more violent as the son grew older, and repined into such an insane delusion or mono-mania as to influence him in making his will, and to disinherit him. We think the evidence fully sustains the contention of an *insane delusion*. But whether it does or not, that was a question for the jury to decide on a proper guidance and direction of the court. But the court refused to instruct the jury on that point and for that reason we appeal.

We admitted that the testator had good business capacity, and we admitted, in opening the case to the jury, that to the open, public world he appeared a good honest business man, sane and full of energy. But while that was apparently true, we contended that he was a mono-maniac about his son.

The court instructed the jury as follows:

1. "That if they shall believe from the evidence that on the 11th day of October, 1895, at the time of the execution of the paper read as evidence, purporting to be the will of Adam C. Layer, deceased, the said Adam C. Layer, was of sound mind, then they shall find said paper to be his last will, but unless he was of sound mind at the time the said paper was executed they should find that it was not his will."

2. "Soundness of mind, in a testator, means sufficient mental capacity on his part to know his children and their claims upon his bounty, and to know his estate of what it consists, and to be able to take a general survey thereof, and make a rational disposition thereof according to a fixed purpose of his own."

This instruction in no manner presents the law of the case on the real question in issue—the idea of partial insanity or monomania or insane delusion.

There was much irrelevant and incompetent testimony admitted on the trial prejudicial to the contestant, to which we excepted and to which we invite the consideration of the court.

### AUTHORITIES CITED.

James v. Langdon, 7 B. Mon., 193; Johnson v. Moore's Heirs, 1 Littell, 372; Sherley v. Sherley, 81 Ky., 244; 53 Md., 376; 24 Ala., 248; 115 Ill., 623; 76 Pa. St., 106; 34 Texas, 201, 33 N. Y., 619; 41 Miss., 249; 16 Lea, (Tenn.) 63; 45 Ala., 398; 16 Barb.,

Layer v. Layer and Others.

263; 8 Watts, (Pa.) 71; Redfield, vol. 1, p. 78; 2 Harr, Del., 375; Dew v. Clark, 5 Russell, 163; L. R., 3 P. & M., 68; L. R., 52 B., 549.

E. E. McKAY, FOR APPELLANT.

The appellant was entitled to have the motion made at the close of propounders testimony to reverse the judgment of the Jefferson County Court admitting the alleged will to record, because:

1. The cause came up *de novo*, and as there had been no proof made that Adam Layer, the testator, as alleged, resided or had property in Jefferson county, the Jefferson County Court had no jurisdiction to admit the paper to record.

2. The court erred in refusing to give instruction marked B offered by contestants. It was the duty of the court to submit all issues raised by the proof, and the proof is the pleading in a will contest, and as the insane aversion of the testator was one of the issues raised by the proof, the jury should have been instructed properly upon that point.

3. No instruction at all was given upon the question of the proper execution of the paper, and as the law puts the burden of proof upon the propounders as to that question it was error to permit the jury to find for the will.

ZACK PHELPS AND FRED FORCHT, JR., ATTORNEYS FOR APPELLEES.

The evidence in the record shows that Adam C. Layer came to this country from Germany 43 years ago at the age of fifteen years and lived all that time in Louisville, where he died in August, 1896. He was a butcher, and died leaving an estate approximated at from twenty to twenty-five thousand dollars, leaving a widow and three children, two daughters aged sixteen and fourteen, and one son about 26 years of age. He was connected with various financial institutions in the city and was recognized as one of the best citizens in Louisville. The evidence shows he was of sound mind and memory when the will was made.

The contestants rely upon the ground that Adam C. Layer had an insane delusion that Mr. Layer was not his son, and for this reason disinherited him. There is, however, no statement of this kind in the bill attacking the will.

It is a well-settled principle of law that a person may be laboring under an insane delusion and still be capable of making a will—also that prejudice or hatred of the testator against any of his children does not invalidate the will.

After the propounders had introduced the first witness, Frank Speckert, proving the execution of the will and soundness of mind of the testator, they rested their case, and the contestants made two motions which were overruled by the court, which are as follows:

"The contestants move the court for a peremptory instruction that the jury find a verdict that the propounded paper is not the will of Adam Layer, deceased, and also move the court to enter an order reversing the judgment of the Jefferson County Court appealed from, allowing the propounded paper to probate and record, because said County Court had no jurisdiction to make and enter said order."

It is a well settled rule of law in this State, that after the propounders have proved due execution of the will, that the burden of proof shifts to contestants.

This case was tried before a jury properly instructed, who promptly returned a verdict in favor of appellees and their verdict should not be disturbed.

### AUTHORITIES CITED.

Benoist v. Mullen, 58 Ill., 324; Roe v. Taylor, 45 Ill., 486; Bitner v. Bitner, 67 Pa. St., 347; Carmichael v. Reed, 45 Ill., 108; Heath v. Hall, 60 Ill., 345; Tudor v. Tudor, 17 B. Mon., 311; Weis v. Foote, 81 Ky., p. 10; Dunham's Appeal, 27 Conn., p. 192; Martin v. Thayer, 37 W. Va., p. 38; Nicholas v. Kerschner, 20 W. Va., p. 251; Taeney v. Long, 76 Pa. St., 106; Stokes v. Shippen, 13 Bush., 180; Schild v. Rompf, 9 Ky. Law Rep., p. 120; Bledsoe v. Bledsoe, 8 Ky. Law Rep., 55; Williams v. Williams, 90 Ky., p. 29; Zimlich v. Zimlich, 90 Ky., p. 657; Powers' Exr. v. Powers, 21 Ky. Law Rep.; Prather v. McClelland, 76 Texas, 574; Townshend v. Townshend, 7 Gill, p. 10; Turner v. Rusk, 53 Md., p. 65; Philadelphia Trust & S. D. Co. v. Drinkhouse, 17 Phil., p. 23; Potter v. Jones, 12 L. R. A., p. 161; Schneider v. Manning, 121 Ill., p. 376; Trumbull v. Givens, 22 N. J. L., p. 117; 51 Am. Dec., 253; American Seamens' Friend v. Hopper, 33 N. Y., p. 619; Carter v. Dixon, 69 Ga., p. 82; Gross' Est., 7 N. Y. S. R., 739; Frowert's Est., 2 W. N. C., p. 588; Sherley v. Sherley, 81 Ky., p. 240; Hoerth v. Zable, 92 Ky., p. 206; Newcomb v. Newcomb, 96 Ky., p. 120; Fee v. Taylor, 83 Ky., 259; Folks v. Folks, opinion filed January 18, 1900, 21 Ky. Law Rep., p. ——

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Adam C. Layer died a resident of Jefferson county, in the year 1896, the owner of an estate amounting to some-

thing over $20,000, exclusive of life insurance. He left
surviving him his wife, Christina Layer, and three children,
—a son, William C. Layer, then about twenty-six years
old, and two daughters, then fifteen and seventeen years
old. In October before he died he made a will by which
he devised all his property to his wife so long as she
remained his widow, with the right to do with it as she
pleased, but if she married she was to receive one-third
of the estate, and the other two-thirds were to go to his two
daughters, they to pay their brother, William Layer, $100.
If his wife died without marrying or disposing of her es-
tate, that portion which remained was to go to the two
daughters, less the $100 to be paid to the son. If either of
the daughters died childless before receiving the estate,
her part was directed to go to her sister. The wife was
named as executor and guardian of the daughters, with-
out bond. The will was probated in the county court with-
out opposition, but subsequently the son, William C. Lay-
er, took an appeal to the Jefferson Circuit Court, and the
case was there tried before a jury, who returned a verdict
sustaining the will, and, his motion for a new trial having
been overruled, he prosecutes this appeal.

The court below properly refused to instruct the jury
peremptorily to find against the paper on the ground that
the evidence did not show that the testator resided in
Jefferson county, there being no plea of want of jurisdic-
tion in the county court. The objection for want of juris-
diction could not be made in this way. Besides, the evi-
dence in the record shows very clearly that the Jefferson
County Court had jurisdiction.

The bill of exception does not show that there was any
testimony admitted over appellant's objection, or that he
excepted to any ruling of the court in the admission of evi-

dence. The only matters for decision are therefore the rulings of the court in giving and refusing instructions to the jury. To understand these, it is necessary to state briefly the evidence in the case. The proof for appellant tended to show that the testator had conceived the notion that appellant was not his son, and entertained a violent antipathy towards him; that he called him vulgar, unseemly names; beat him with a barrel stave, or anything he could get hold of; that he would tie him and whip him; showed no affection or kindness towards him; treated him cruelly; said he was no son of his,—was no Layer; that he was not his father; that he did not dress the boy as other men in his station dressed their sons, or give him like liberties; and that two or three years before he died he ran the son off with a big knife. The proof for appellant also showed that he was a good son, very much afraid of his father, worked hard, and tried to obey his father's instructions and merit his approval, and that there was no foundation for the father's antipathy to him. The evidence for the appellees was very contradictory of that for the appellant, and showed that the boy himself was also of a stubborn disposition, not unlike his father, and that the collisions between them were not without his fault. It is earnestly insisted for appellees that the proof conclusively showing the father to be a man of good general capacity, who successfully managed his own business as a butcher until his death, the court should have instructed the jury peremptorily to find for the will, and that at least, under the evidence, a new trial should not be ordered. But the rule in this State is that, if there is any evidence, the question must be submitted to the jury, and, if it is to be submitted to the jury, it must be so submitted

as to give the parties substantially a fair trial on the issue before the jury.

It is hard to understand how a father could treat his only son in the manner described by a number of witnesses in this record, unless we credit the testimony of the repeated declarations of this man that he was not the father of the boy. There seems to have been absolutely no ground for this belief, which was so exhibited in the conduct of the father as to impress upon the boy's mind the idea that he was an adopted child. There was also some proof of insanity in other members of testator's family, and that he had once set out to drown himself. Independently of the opinions of the witnesses, the jury, on the testimony for appellant, might well have inferred that the testator labored under an insane delusion that he was not the father of appellant, and for that reason left him out in his will. It is true there was testimony for the appellees from which the jury might have drawn the opposite conclusion; but the credibility of the witnesses was to be determined by the jury under proper instructions, and this court is not the tribunal in which it may be decided. The only question here is, was the issue fairly and intelligently submitted to the jury? Sherley v. Sherley's Ex'r. 81 Ky., 240.

The only instructions given by the court to the jury are as follows: (1) "The court instructs the jury that if they shall believe from the evidence that on the 11th day of October, 1895, at the time of the execution of the paper read as evidence herein, purporting to be the will of Adam C. Layer, deceased, the said Adam C. Layer was of sound mind, then they should find the said paper to be his last will; but unless he was of sound mind at the time the said paper was executed they should find that it is

not his will." (2) "Soundness of mind in a testator means sufficient mental capacity upon his part to know his children and their natural claims upon his bounty, and to know his estate, of what it consists, and to be able to take a general survey thereof, and make a rational disposition thereof, according to a fixed purpose of his own." The court refused to instruct the jury, on motion of appellant, in substance, that if the testator, at the time of the execution of the paper in contest, was under any mental unsoundness, which operated upon him at the time to make a different disposition of his property from what he would otherwise have made, or if he was then under an insane delusion towards his son, and by reason of it made a disposition of his property other than he would have made but for it, then they should find the paper not to be his last will and testament. It is insisted for appellant that the instructions given by the court in no manner present the law of the case on the real question in issue; that under it no jury could, on their conscience, decide against the will, as it was admitted that the testator was sane as to other matters, and his general capacity was undisputed. It seems that this complaint is well founded, and that, under the instructions given them, the jury would understand that they were to find the paper to be the will of the testator, if he had general capacity at the time it was made, although he was laboring under an insane delusion in regard to his son, and the will was the direct result of this delusion. It is well settled that such is not the law. In 1 Redf. Wills, side page 70, the learned author says: "The degrees of monomania are very various. In many cases the person is entirely capable of transacting any matters of business out of the range of his peculiar infirmity, and he often

manifests considerable sagacity and forecast in keeping the particular subject of his delusion from the knowledge of others. But more commonly he is not conscious of en- tertaining opinions different from the mass of men, even upon the particular subjects of his delusion, and refuses to be convinced of laboring in any degree under mental unsoundness." And, again, on page 78, he says: "When- ever it appears that the will is the direct offspring of the partial insanity of monomania under which the testator was laboring, it should be regarded as invalid, though his general capacity be unimpeached." In Dew v. Clark, 1 Hagg. Ecc., 311, the testator was a sensible, clever man, conducting himself rationally in the ordinary affairs of life. He amassed a considerable fortune by his profession. His friends, some of them physicians, never suspected he was of unsound mind. Yet it was shown he labored under a strange hallucination, both as to himself and his daughter. She was proved to have been always chaste, modest, dut- iful, and affectionate, yet her father regarded her as the most extraordinary instance of depravity and profligacy. He considered himself a pattern of fatherly tenderness, though tying his daughter to a bedpost, flogging her with unmerciful severity, and compelling her to perform services to which even a servant would not submit. These impres- sions, which no persuasion or argument could change, were recorded in his will, which was set aside by the court on the ground that it was the result of insane delusion. This case has often been followed in America. Thus, in Boyd v. Eby, 8 Watts, 71, it is said: "And if he is under a de- lusion, though there be but a partial insanity, yet if it be in relation to the act in question, it is well settled that it will invalidate contracts generally, and will defeat a will which is the direct offspring of that partial insanity, both

Layer v. Layer and Others.

in the courts of common law and in the ecclesiastical courts, although the testator in making it was sane in other respects on ordinary subjects." In Florey's Ex'rs v. Florey, 24 Ala., 241, the court charged the jury that if they believed from the evidence that at the time the will was made the testator was under an insane delusion as to the contestant being his son, and that the will was the off-spring and result of such delusion, the will was void, and should be set aside. The jury found against the will, and on appeal the judgment was affirmed. The court said: "If, however, partial insanity or monomania is established, and the will is the result of such insanity, the act is vitiated. This we understand to be the proposition asserted by the charge under consideration, and its correctness as a legal proposition has been considered as settled since the judgment of Sir John Nicol in the case of Dew v. Clark." In Ballantine v. Proudfoot, 62 Wis., 216, (22 N. W., 392), the judgment of the circuit court rejecting the will was sustained, although the general capacity of the testratrix was unimpeached. The court said: "It is said by proponent's counsel that the testimony clearly shows that the disposition made by the testatrix of her property was in accordance with her wishes and intentions as expressed to various persons. This is true; but this shows more distinctly how long and entirely the testratrix had become subject to the insane delusion which controlled her action up to the time of her death. She certainly seems to have lost all affection for her daughter and her daughter's family, in the consequence, probably, of having taken up the utterly groundless notion that her daughter was trying to poison her. She carried her dislike to that extent that she did not wish her daughter to see her while alive. In view of these incontestable facts, we must consider

her insane and incapable of making a will, notwithstanding
she may have been of a sound mind in other respects.
. . . Such unnatural feelings are so contrary to human
nature that we are inclined to account for them on the
ground that the mother at the time was not herself, but
was laboring under some mental disorder." So, in So-
ciety v. Hopper, 33 N. Y., 624, the court said: "If a person
persistently believes supposed facts which have no real ex-
istence, except in his perverted imagination, against all
evidence and probability, and conducts himself, however
logically, upon the assumption of their existence, he is,
so far as they are concerned, under a morbid delusion, and
delusion in that sense is insanity. Such a person is essen-
tially mad or insane on those subjects, though no other
subjects he may reason, act, and speak like a sensible man."
A great number of similar decisions may be cited. The
authorities seem to be uniform. See Society v. Price, 115
Ill., 623, (5 N. E., 126); Mullins v. Cottrell, 41 Miss., 291;
Burkhart v. Gladish, 123 Ind., 337, (24 N. E., 118); Potts
v. House, 6 Ga., 324, (50 Am. Dec., 353); Cotton v. Ulmer,
45 Ala., 378, (6 Am. Rep., 703); Robinson v. Adams, 62 Me.,
369, (16 Am. Rep., 473); Brown v. Ward, 53 Md., 376, (36
Am. Rep., 422); Potter v. Jones, 12 L. R. A., 161, and note
(s. c. 20 Or., 239), (25 Pac., 769); Orchardson v. Cofield, 171
Ill., 14, (49 N. E., 197), (40 L. R. A., 256); Appeal of Kimber-
ly, 68 Conn., 428, (36 Atl., 847) (s. c. 37 L. R. A., 261,) and
notes).

In Johnson v. Moore's Heirs, 11 Ky., 373, this court,
after showing that the testator was extremely hostile to
his brothers without cause to such an extent as to indi-
cate a species of mental derangement which affected him
as to them, and not otherwise, said: "And, at the time
of making his last will now in contest, he labored strongly

Layer v. Layer and Others.

under the effects of this disorder of mind; for, when he was inquired of by one of the subscribing witnesses why he had pretermitted his relations, he became instantly irritated, and declared that they had endeavored to get his estate before his death, and that he had declared war against all the Moores. For this disaffection towards them there never appeared to be the slightest cause, but the contrary, and the reasons for it, when assigned by himself, were futile and groundless. He can not therefore, be accounted a free agent in making his will, so far as his relatives are concerned, although free as to the rest of the world. But however free he may have been as to other objects, the conclusion is irresistible that this peculiar defect of intellect did influence his acts in making his will, and for this cause it ought not to be sustained." This principle is also recognized in Sherley v. Sherley's Ex'r, 81 Ky., 244. There is nothing in Schild v. Rompf (Ky.) 4 S. W., 235, inconsistent with the previous rulings. In that case the contestant asked the court to instruct the jury that if the testator believed in witchcraft, and his mind could not be disabused of that belief by argument or persuasion, then he was laboring under an insane delusion, and, if the paper to any extent was the offspring of such a delusion, it was not his last will. Such instructions, as will be seen from the cases cited, are generally condemned, and were refused. This court said: "There is some proof conducing to show that the family were inclined to believe that certain persons possessed unnatural powers, but there is nothing in this case leading to the conclusion that the act of the testator in making this will was prompted by any evil spirit, or that he made it under the delusion that his daughter was a witch, when the daughter, too, is insisting that her father had made up

.with her, and had exhibited, prior to his death, much affec-
tion for both herself and children."       Williams' Ex'r v. Will-
iams, 90 Ky., 28; 11 R., 828 (13 S. W., 250), is also relied on as
maintaining a contrary doctrine. In that case the trial
court had instructed the jury to find against the will, "if
the testator was at the time, and in the act of executing
said paper, dominated by some unnatural or irrational bias
of mind, so as to overrule and control his own rational
will power." This court held the instruction erroneous,
for the reason that the testator might have a bias as to
the objects of his bounty and be competent to make a
will. The court said: "A testator, if mentally compe-
tent, and acting from his own will, may exercise his
choice as to the object of his bounty, and the fact that he
may have a bias in doing so does not invalidate his will.
It is true the instruction says that it must have been
such an unnatural and irrational bias as to dominate and
control the rational will power of the testator, but this
qualification does not render it unobjectionable." No in-
struction as to the effect of partial insanity was before
the court in that case, but, further on, the court, recog-
nizing the principle established by the previous cases,
said: "The only issue was whether the testator was, at
the making of his will, of sound or unsound mind. If he
was then a monomaniac upon religion, he was of unsound
mind. This issue should have been submitted to them
in as plain and simple language as possible." This is also
in accord with the authorities above cited, and we have
been able to find no authority holding it improper in a
case of this character for the court to instruct the jury
on the effect of monomania inducing the will. Under such
proof, the real question is not as to the testator's gen-
eral capacity, but as to particular insanity, causing a

disposition of his estate other than he would otherwise
have made.  We are therefore of opinion that the court
below should have instructed the jury further that if the
deceased, at the time of the execution of the paper in
contest, was under an insane delusion that appellant was
not his son, and was of unsound mind on this subject, and
by reason of such unsoundness of mind made a different
disposition of his estate from that he would otherwise have
made, they should find it not to be his last will and testa-
ment, although his capacity was good on other subjects.
On another trial the court should also change the phrase-
ology of instruction No. 1, so as to direct the jury to find
the paper to be the will of the deceased, unless he was
of unsound mind at the time it was executed.  Boone v.
Ritchie (Ky.), 53 S. W., 518, (21 Ky. L. R., 864) and cases
reversed, and cause remanded for a new trial and for fur-
ther proceedings consistent with this opinion.